UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GINA CHRISTOPHERSON, individually and on behalf of all those similarly situated<br><br>Plaintiff,<br><br>v.<br><br>CINEMA ENTERTAINMENT CORPORATION,<br><br>Defendant. | Case No. 0:23-cv-03614<br>Judge Nancy E. Brasel<br>Magistrate Judge Leo I. Brisbois<br><br>**STATEMENT OF THE CASE** |

Paragraph 3 of the Court's March 6, 2024 Pretrial Scheduling Notice and Order requires that the parties set forth (a) their versions of the facts of the case, (b) a listing of particularized facts that support the claimed liability or defenses, including any applicable statutes as identified by number, and (c) an itemization and explanation of any claimed damages. Plaintiff Gina Christopherson's ("Christopherson") statement below is preliminary and subject to significant changes based on additional information learned in discovery.

### A. Christopherson's "version of the facts of the case."

At an unknown date, but at least by December 2019, Defendant installed a tracking program called "Meta Pixel" (then called "Facebook Pixel") onto its proprietary website ("CEC Website"). Meta Pixel is a program that Meta Platforms, Inc. ("Meta")—formerly known as Facebook—offers to website operators to allow them to track the actions of its consumers on their websites. Defendant programmed Meta Pixel to collect and transmit to Facebook/Meta information about the conduct of consumers on the CEC Website—this

1

included but is not limited to (i) the name of the movie the consumer purchased a ticket for, (ii) the theater where the consumer intends to watch the movie; and (iii) the name of any movie the consumer watched a trailer for.  Defendant further programmed the CEC Website to send these events about its consumers to Facebook/Meta—together with the consumer's unique Facebook ID.  Facebook/Meta receives the event information along with the user's Facebook ID, thus connecting the specific Facebook user with the event-related information sent by the CEC Website.

In early July of 2023, Christopherson accessed the CEC Website and watched trailers on it.  Using the Meta Pixel program, the CEC Website then transmitted to Facebook the name of the movie trailer that Christopherson watched along with her Facebook ID without her consent. In the subsequent days, Christopherson's Facebook page began showing her advertisements for those films and similar films. Defendant's use of the Meta Pixel was successful because, on July 14, 2023, Christopherson went back to the CEC Website and purchased movie tickets. Defendant then transmitted the name of the movie Christopherson purchased tickets for and the location at which she intended to watch the movie to Facebook/Meta along with her Facebook ID without her consent.

Defendant did the same for all other customers that watched trailers and purchased movies tickets on the CEC Website while logged into their Facebook accounts.  Due to how Defendant programmed its website, Defendant violated the VPPA by sharing with Facebook/Meta (i) what trailers its customers watched; (ii) what movies they purchased tickets for; and (iii) where they intended to watch the movies.  Therefore, Christopherson also brings this case on behalf of similarly situated customers of Defendant.

**B. Christopherson's "listing of particularized facts which support the claimed liability or defenses, including any applicable statutes as identified by number."**

This class action is brought against Defendants for its violation of the VPPA, 18 U.S.C. § 2710. VPPA protects consumer privacy by providing for a federal cause of action against "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). A "video tape service provider" is defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). "Personally identifiable information" ("PII") is defined by the VPPA as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

The particularized facts that show the Defendant's liability are as follows:

- Defendant is a "video tape service provider" under the VPPA because it sells tickets to prerecorded movies and delivers those movies to its consumers in its movie theaters. It also delivers prerecorded videos on the CEC Website through movie trailers.

- Defendant, through its website, collects records of every trailer watched, movie ticket purchased, and location of the relevant movie theater for each of its customers.

- Defendant programmed the CEC Website to collect this information and to share it with Facebook/Meta, along with the customer's Facebook ID, through the Meta Pixel program. This information combined with a Facebook ID is PII under that VPPA. The Meta Pixel program shares this information with Facebook/Meta for any customer that has a Facebook account and also uses the CEC Website.

- Defendant gains a pecuniary benefit from participating in the Meta Pixel program because advertisements for Defendant's movies get sent to its customer when they are on Facebook.

- Defendant used the Meta Pixel program on the CEC Website to gather Christopherson's Facebook ID, the trailers she watched, the movies she purchased tickets for, and the theater she planned to attend and shared that information with Facebook. Defendant, thereby, knowingly disclosed the PII of Christopherson to Facebook/Meta.

- Defendant did not inform Christopherson that it was disclosing Christopherson's PII to Facebook/Meta and did not request that Christopherson, or any other member of the class, provide consent to the disclosure of her PII.

### C. Christopherson's "itemization and explanation of any claimed damages."

The VPPA provides that consumers whose rights under the VPPA have been violated with the right to recover "actual damages but not less than liquidated damages in an amount of $2,500" for each violation as well as punitive damages, 'reasonable attorneys' fees and other litigation costs reasonably incurred," and "such other preliminary and equitable relief as the court determines to be appropriate." 18 U.S. Code § 2710 (c).

Discovery will be needed to determine damages. Specifically, Christopherson will need to determine through discovery (1) the number of times that Defendant shared Christopherson's PII with Meta, (2) the number of other customers that Defendant shared PII with Meta—*i.e.* the scope of the class—and (3) the number of times Defendant shared the other customers PII with Meta. Once those three things are ascertained, the damages will be at least the number of violations of the VPPA—for the entire class—multiplied by $2,500, plus reasonable attorneys' fees and expenses.

4

Dated: April 5, 2024                              Respectfully Submitted,

/s/ *Ben Hutman*

Ben Hutman (*pro hac vice*)
SADIS & GOLDBERG LLP
551 Fifth Ave. 21st Floor
New York, New York 10176
Telephone: (212) 573-6675
Email: bhutman@sadis.com

Matthew D. Forsgren, Reg. No. 0246694
Caroline H. Brunkow, Reg. No. 0398936
FORSGREN FISHER McCALMONT
DeMAREA TYSVER, LLP
Capella Tower
225 South 6th Street, Suite 1500
Minneapolis, MN 55402
(612) 474-3300
mforsgren@forsgrenfisher.com
cbrunkow@forsgrenfisher.com

*Attorneys for Plaintiff Gina Christopherson*