UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GINA CHRISTOPHERSON, individually and on behalf of all those similarly situated<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CINEMA ENTERTAINMENT CORPORATION,<br>　　　　　　　　　　Defendant. | Case No. 0:23-cv-03614<br><br>Judge Nancy E. Brasel<br><br>Magistrate Judge Leo I. Brisbois |

**<u>NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

Defendant Cinema Entertainment Corporation ("CEC"), by and through its undersigned counsel, hereby gives notice of the Order in *Walsh v. California Cinema Investments LLC et al..*, No. 2:23-CV-09608-ODW (AJRx) (slip op.) (C.D. Cal. Jul. 29, 2024) (Wright III, J.) (attached hereto as Exhibit 1) which supports the arguments CEC makes in its pending Motion to Dismiss (ECF No. 19) and which was issued after briefing on the Motion to Dismiss closed.

The *Walsh* court dismissed Plaintiff's Complaint with prejudice holding that Plaintiff did not sufficiently allege that the defendant, a public movie theater, was a video tape service provider ("VTSP"), reasoning that the defendant did not "deliver" audio visual materials:

> Rather, the definition of "delivery" and its application to movie theaters has previously been considered within the Ninth Circuit. In *Osheske v. Silver Cinemas Acquisition Co.*, the court considered the applicability of the VPPA, and defined "delivery" of audio visual materials as turning on the transfer of a possessory interest in the materials. No. 2:22-cv-09463 HDV (JCx), 2023 WL 8188464, at *3–4 (C.D. Cal. Oct. 31, 2023), *appeal filed*, No. 23-3882 (9th Cir. Nov. 30, 2023). Under this definition, a movie theater could not be a VTSP, because movie theaters do not give their customers a possessory interest in the movies they show. Applying *Osheske* here, the Court would not need to consider the definition from *In re Vizio* to determine whether movie theaters are in the *business* of delivering video content, because movie theaters do not "deliver" video content at all.

*Walsh* at 5.

In addition, the *Walsh* court found that the defendant did not deliver audio visual materials by displaying trailers on its website, reasoning that:

> [F]or Defendants "to be engaged in the *business* of delivering video content, [Defendants'] product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." 238 F. Supp. 3d at 1221 (emphasis added). In this context, "'business' connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's work." *Id.* Here, however, the mere presence of trailers on Defendants' website is insufficient to establish that Defendants are delivering audio visual materials to a degree that would be in the *business* of doing so. Walsh has made no allegations which suggest that delivering movie trailers is "a focus of Defendants' work." (*See generally* Compl.; Opp'n.) Indeed, it seems more likely that these trailers merely serve to promote Defendants' actual business as a movie theater. Courts have repeatedly held that marketing videos are insufficient to bring a defendant under the definition of a VTSP.

Dated: July 31, 2024                    Respectfully submitted,

                                        BAKER & HOSTETLER LLP

                                By:     /s/ *Bonnie Keane DelGobbo*

                                        Bonnie Keane DelGobbo (*pro hac vice*)
                                        Joel C. Griswold (*pro hac vice*)
                                        BAKER & HOSTETLER LLP

One North Wacker Drive
Suite 3700
Chicago, IL  60606-2841
Telephone:  312.416.6200
Facsimile:   312.416.6201
bdelgobbo@bakerlaw.com
jcgriswold@bakerlaw.com
IL # 6309394

RINKE NOONAN, LTD.

Alex T. Mastellar
RINKE NOONAN, LTD.
1015 W. St. Germain St., Suite 300
P.O. Box 1497
St. Cloud, MN 56302-1497
(320) 251-6700
(320) 656-3500 fax
amastellar@rinkenoonan.com
#0397323

**ATTORNEYS FOR DEFENDANT CINEMA ENTERTAINMENT CORPORATION**

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this date, July 31, 2024, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record.

<em>/s/ Bonnie Keane DelGobbo</em>

# EXHIBIT 1

# United States District Court
# Central District of California

| | |
|---|---|
| MICHAEL WALSH,<br><br>     Plaintiff,<br><br>  v.<br><br>CALIFORNIA CINEMA INVESTMENTS LLC et al.,<br><br>     Defendants. | Case № 2:23-cv-09608-ODW (AJRx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [16]** |

## I.  INTRODUCTION

Plaintiff Michael Walsh brings this action against Defendants California Cinema Investments LLC ("California Cinema"), USA Cinema Investments Holding Inc. ("USA Cinema"), and Cinépolis USA, alleging violations of the Video Privacy Protection Act ("VPPA") and California Civil Code section 1799.3 ("Section 1799.3"). (Compl. ¶ 2, ECF No. 1.) Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), Defendants now move to dismiss this action for failure to state a claim under either the VPPA or Section 1799.3. (Mot. Dismiss ("Mot." or "Motion"),

ECF No. 16.)  For the reasons discussed below, the Court **GRANTS** the Motion and **DISMISSES** this action.[1]

## II.  BACKGROUND

USA Cinema is a chain with movie theaters across the United States.  (Compl. ¶ 1.)  On behalf of USA Cinema, California Cinema operates a website through which consumers can purchase movie tickets online (the "Website").  (*Id.* ¶¶ 1, 9.)  Walsh alleges that USA Cinema and California Cinema installed "tracking pixels" on the Website, which allegedly send consumers' personally identifiable information ("PII") to Meta Platforms, Inc. ("Meta") each time a consumer purchases a movie ticket on the Website.  (*Id.* ¶ 1.)  This PII allegedly includes unique user ID numbers and allows Meta to obtain the title of the movie for which the consumer purchased the ticket.  (*Id.* ¶ 2.)

On November 13, 2023, Walsh filed this action alleging that Defendants violated the VPPA and Section 1799.3 by disclosing PII to Meta without consumers' written consent.  (*Id.* ¶ 2.)  Under Rule 12(b)(6), Defendants move to dismiss both of Walsh's causes of action on the bases that (1) Walsh fails to state a claim under the VPPA; (2) Walsh fails to state a claim under Section 1799.3; and (3) the VPPA and Section 1799.3, both on their face and as applied to Defendants, violate the First Amendment to the United States Constitution.  (Mot. 2.)[2]

## III.  LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] On January 29, 2024, Defendants notified the United States Attorney General and the Attorney General of the State of California of their constitutional challenges to the VPPA and Section 1799.3. (Notice Constitutional Question, ECF No. 17.)  On March 29, 2024, the United States intervened in the case solely for the purpose of defending the constitutionality of the VPPA.  (Notice Intervention 2, ECF No. 25; Opp'n Intervention, ECF No. 30.)

survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Defendants argue that Walsh fails to state a claim under both the VPPA and Section 1799.3. (Mot. 2) The Court considers each argument in turn.

A.  **Walsh's Claim Under the Video Privacy Protection Act**

In 1988, Congress enacted the VPPA to codify "a context-specific extension of the substantive right to privacy." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (emphasis omitted). The statute "protects generally a consumer's substantive privacy interest in his or her video-viewing history." *Id.* To plead a plausible claim under the VPPA, a plaintiff must allege that (1) "a defendant is a video tape service provider" ("VTSP"); (2) "the defendant disclosed [PII] concerning any customer to any person"; (3) "the disclosure was made knowingly"; and (4) "the disclosure was not authorized by [18 U.S.C. §] 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).

Defendants argue that Walsh's VPPA claim fails because Defendants do not fall within the purview of the statute's definition of a VTSP. (Mot. 2.) A VTSP is "any person, engaged in the business, in or affecting interstate or foreign commerce, of *rental, sale, or delivery* of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4) (emphasis added). Accordingly, whether Defendants fall under the definition of a VTSP turns on if Defendants "rent," "sell," or "deliver" audio visual materials.

Although Walsh does not contend that Defendants "sell" audio visual materials, he does argue that movie theaters engage in the business of (1) "delivering" audio visual materials, (Opp'n 4–6, ECF No. 23), and (2) "'renting' consumers access to view 'prerecorded . . . audio visual materials' on its physical premises," (*id.* at 10).[3]

   1. *"Delivering" Audio Visual Materials as a Movie Theater*

First, Walsh argues that the services provided by movie theaters are analogous to those of a streaming service, and Defendants should therefore be considered to

---

[3] Walsh specifically argues that Defendants "convey" video content as described in *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017). (Opp'n 4.) The conveyance test from *In re Vizio, Inc.* deals with determining whether a defendant is "engaged in the business of delivering video content." *Id.* Walsh's argument is addressed further below.

4

deliver audio visual materials because they are tailored to convey video content to consumers. (Opp'n 4.)

In making this argument, Walsh relies on the court's opinion in *In re Vizio, Inc.* In *In re Vizio, Inc.*, the court held that "for [a defendant] to be engaged in the business of delivering video content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *Id.* at 1221. This definition was developed specifically to distinguish between defendants like a smart TV manufacturer, who is in the *business* of delivering video content, and someone like a letter carrier, who might *deliver* a videotape to a consumer's mailbox but is not in the *business* of specifically delivering videotapes. *Id.* at 1221–22. Thus, *In re Vizio*'s definition of being "engaged in the business of delivering video" says nothing about what actually constitutes "delivery," but focuses more so on the definition of "business."

Rather, the definition of "delivery" and its application to movie theaters has previously been considered within the Ninth Circuit. In *Osheske v. Silver Cinemas Acquisition Co.*, the court considered the applicability of the VPPA, and defined "delivery" of audio visual materials as turning on the transfer of a possessory interest in the materials. No. 2:22-cv-09463 HDV (JCx), 2023 WL 8188464, at *3–4 (C.D. Cal. Oct. 31, 2023), *appeal filed*, No. 23-3882 (9th Cir. Nov. 30, 2023). Under this definition, a movie theater could not be a VTSP, because movie theaters do not give their customers a possessory interest in the movies they show. Applying *Osheske* here, the Court would not need to consider the definition from *In re Vizio* to determine whether movie theaters are in the *business* of delivering video content, because movie theaters do not "deliver" video content at all.

However, Walsh pushes back against *Osheske*'s definition of "delivery," and cites to a series of court decisions finding that video streaming websites are VTSPs, despite not transferring any possessory interests. (Opp'n 9.) Walsh first suggests one alternate definition of delivery, where it means "to produce the promised, desired, or

expected results." (*Id.* at 8.) A court within the Ninth Circuit has considered this definition of "delivery," and concluded that it does not apply to movie theaters. In *Garza v. Alamo Intermediate II Holdings, LLC*, the court found that this definition of "delivery" is not what the word "usually means," and that it "is surely not what 'delivery' means in [the VPPA]." No. 23-cv-05849-VC, 2024 WL 1171737 at *1 (N.D. Cal. Mar. 19, 2024), *appeal filed*, No. 24-2165 (9th Cir. Apr. 8, 2024). The court held that the VPPA "refers to the delivery of a specific kind of good ('audiovisual materials'), not the delivery of a result or outcome." *Id.* Walsh acknowledges this holding from *Garza* but responds to it only by noting that his proposed definition—one involving "expected results"—is in the dictionary, and that "if [Defendants'] projector broke and the movie did not play, movie-goers would say [Defendants'] failed to 'deliver' the movie." (Opp'n 9.) This does not address the *Garza* court's note about the context of the word in the actual statute, which refers to the delivery of "audio visual materials," rather than a generalized "expected result." The Court agrees with *Garza* and finds that Walsh's dictionary definition is not applicable in the context of the VPPA.

Next, Walsh argues for a second alternate definition of "delivery," where it means "sending something to an intended destination." (*Id.* at 8.) The *Garza* court also considered this definition and concluded that it also does not apply to movie theaters. *See Garza*, 2024 WL 1171737 at *1 (stating that even if "delivery" were defined as "the act of 'sending something to an intended destination,'" this definition would not cover movie theaters, and that "it would be quite a stretch to say that movie theaters 'send' movies by projecting them onto a screen"). Walsh disagrees with *Garza* and argues that "[i]t is no more of a stretch to say [Defendants deliver] open-reel movies on a silver screen than it is to say [a streaming service] delivers videos on one's computer screen." (Opp'n 9.)

It is true that courts have held streaming service providers and similar platforms to be VTSPs. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F.

6

Supp. 3d 767, 798–99 (N.D. Cal. 2019); *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 852 (N.D. Cal. 2022); *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960 at *6 (N.D. Cal. Aug. 10, 2012); *Jackson v. Fandom, Inc.*, No. 22-cv-04423-JST, 2023 WL 4670285 at *3 (N.D. Cal. July 20, 2023); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023).

However, streaming platforms can clearly be distinguished from movie theaters for the purposes of the VPPA. The Supreme Court has held that movie theaters are places of public accommodation, and that individuals there do not enjoy the same privacy rights offered in a private home. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 50 (1973).[4] Conversely, streaming services typically send audio visual materials to private devices, often in private homes. Thus, there is a key distinction between streaming services and movie theaters, and there is no inconsistency between holdings which treat the former as VTSPs and those which decline to do the same for the latter.

As the Court finds Walsh's analogy between movie theaters and streaming services to be unavailing, the Court agrees with the holdings from *Osheske* and *Garza*

---

[4] Walsh acknowledges the Supreme Court's decision in *Paris Adult Theatre*, but he argues that Congress created the VPPA because the constitutional rights to privacy outlined by the Supreme Court in that case did not go far enough. (Opp'n 12.) However, even *In re Vizio Inc.*—upon which Walsh heavily relies—only expands the VPPA to cover businesses that bring audio visual materials into a consumer's home. *In re Vizio, Inc.*, at 1222 ("In keeping with this statutory definition, Plaintiffs plausibly allege that [the defendants' services] are designed to enable consumers to seamlessly access Netflix, Hulu, YouTube, and Amazon Instant Video content *in their homes*." (emphasis added)).

Walsh cites to the VPPA's legislative history to argue that Congress created the VPPA to generally give consumers control over the flow of their information regardless of location. However, that same legislative history can suggest the opposite. One of the VPPA's sponsors, Senator Leahy, stated, "It is nobody's business what [people] watch on television or read or think about *when they are home*." S. REP. 599, 5, 1988 U.S.C.C.A.N. 4342-1, 4342–5 (emphasis added). Another VPPA sponsor, Senator Simon, stated, "Who would guess that the choice of movies one watches *in the privacy of the home* would not be confidential? The Video Privacy Protection Act takes an important step in ensuring that individuals will maintain control over their personal information when renting or purchasing a movie." 134 Cong. Rec. S16312-01 (emphasis added). Accordingly, the VPPA's legislative history does not support Walsh's argument that Congress created the VPPA because it felt that *Paris Adult Theatre* did not go far enough.

and concludes that movie theaters do not "deliver" audio visual materials for the purposes of the VPPA.

### 2. "Renting" Audio Visual Materials as a Movie Theater

Next, Walsh argues that Defendants are engaged in the business of "'renting' consumers access to view 'prerecorded . . . audio visual materials' on its physical premises." (Opp'n 10.) Here, Walsh again analogizes movie theaters to online services that allow consumers to access such materials on their computers by paying a subscription fee. (*Id.*) As discussed above, however, these services—which offer video content for in-home viewing—are not analogous to the offering of video content in a public space like a movie theater. Further, courts have considered similar arguments, and determined that movie theaters "do not sell (or even rent) audio visual materials," but rather only sell "a license to enter the theater premises at a particular time and, in effect, attend a *public event*." *Osheske*, 2023 WL 8188464, at *4; *see also Garza,* 2024 WL 1171737 at *1 (holding that movie theaters do not rent movies to moviegoers).

Walsh provides the Court with two unreported out-of-circuit cases that allegedly rebuke *Osheske* and *Garza*. (Opp'n 1.) The first case, *Goldstein v. Fandango Media, LLC*, does not deal with movie theaters as such, but rather with a website that sold movie tickets and displayed video clips. No. 22-80569-CIV, 2023 WL 3025111, at *1 (S.D. Fla. Mar. 7, 2023). There, the defendant argued that it was not a VTSP because its primary business was selling movie tickets, rather than displaying video clips. *Id.* at *3. The court in *Goldstein* ultimately concluded that it would need to conduct a factual inquiry beyond the pleadings to determine whether this was the case. *Id.* This suggests that the critical issue in *Goldstein* was not whether the defendant was in the business of *selling movie tickets*, but rather whether the defendant was in the business of *primarily displaying video clips* on its website. *Id.* In *Goldstein*, selling movie tickets, on its own, was insufficient to give rise to VTSP status for the defendants. Thus, *Goldstein* does not contradict the holding from

*Osheske*, that a movie theater sells only "a license to . . . attend a public event." *See Osheske*, 2023 WL 8188464, at *4 (emphasis omitted).

Walsh's second case, *Christopherson v. Cinema Entertainment Corporation*, is a decision that simply states that "[t]he various Federal District Courts to have addressed claims under the VPPA are taking varying approaches on applying the definition of 'video tape service provider' to website owners, as well as, applying the VPPA's other language to modern technology." No. 23-cv-3614 (JWB/LIB), 2024 WL 1120925, at *4 (D. Minn. Mar. 6, 2024). The court in *Christopherson* notes that the resolution of the different approaches to defining a VTSP "remain[s] unsettled." *Id.* Ultimately, neither *Goldstein* nor *Christopherson* answers the question of whether a movie theater "rents" "audio visual materials," nor do they contradict the persuasive in-circuit holdings in *Osheske* or *Garza*.

With Walsh failing to provide any other support for the argument that Defendants "rent" audio visual materials, the Court again agrees with the holding from *Osheske* and finds that movie theaters do not "rent" audio visual materials for the purposes of the VPPA.

3. *"Delivering" Audio Visual Materials Through Movie Trailers*

Lastly, Walsh makes one further argument that Defendants deliver audio visual materials by displaying movie trailers on the Website. (Opp'n 5–6.) However, as stated by the court in *In re Vizio*, for Defendants "to be engaged in the *business* of delivering video content, [Defendants'] product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." 238 F. Supp. 3d at 1221 (emphasis added). In this context, "'business' connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's work." *Id.*

Here, however, the mere presence of trailers on Defendants' website is insufficient to establish that Defendants are delivering audio visual materials to a degree that would be in the *business* of doing so. Walsh has made no allegations

which suggest that delivering movie trailers is "a focus of Defendants' work." (*See generally* Compl.; Opp'n.) Indeed, it seems more likely that these trailers merely serve to promote Defendants' actual business as a movie theater. Courts have repeatedly held that marketing videos are insufficient to bring a defendant under the definition of a VTSP. *See, e.g.*, *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 993 (S.D. Cal. 2023) ("Hosting and creating prerecorded videos for the purpose of marketing its products does not suffice to plausibly allege Defendant is a video tape service provider."); *Carroll v. Gen. Mills, Inc.*, No. 2:23-cv-01746-DSF (MRWx), 2023 WL 4361093, at *4 (C.D. Cal. June 26, 2023) (finding that a defendant is not a VTSP simply because it provides videos on its website to increase its brand presence). Because Walsh has not alleged that the movie trailers are anything more than marketing for a business that is otherwise not a VTSP, the presence of these trailers on the Website is insufficient to make Defendants a VTSP. *Hernandez v. Chewy, Inc.*, No. 2:23-cv-05620-HDV (RAOx), 2023 WL 9319236, at *3 (C.D. Cal. Dec. 13, 2023) (dismissing a VPPA claim because the plaintiff's complaint failed to allege how the videos supposedly giving rise to the defendant's VTSP status were a central focus of the defendant's business.)

Furthermore, the Court notes that these trailers do not appear to feature in any way in Walsh's Complaint. (*See generally* Compl.) Walsh alleges only that Defendants collect and disclose PII when consumers purchase movie tickets, and that the PII in question consists of a unique user ID and allows Meta to determine for which movies the consumer was purchasing tickets. Indeed, this is identical to the situation in *Osheske*. There, the plaintiff brought a VPPA claim against a movie theater for disclosing user IDs and movie titles to Meta during the ticket purchase process. *Osheske*, 2023 WL 8188464 at *1. Although the plaintiff in *Osheske* argued that the defendant was a VTSP in part because it displayed movie trailers on its website, the court rejected this argument because the presence of those trailers was not

relevant to the plaintiff's allegations. *Id.* at *6. Here, like in *Osheske*, the presence of the trailers on Defendants' website has no relation to Walsh's VPPA claim.

Therefore, the Court rejects Walsh's argument that the presence of movie trailers on Defendants' website renders them VTSPs subject to the VPPA.

### 4. Conclusion—VPPA

For the reasons stated above, Walsh fails to establish that Defendants fall under the definition of a VTSP for the purposes of the VPPA, either through their business as a movie theater or the presence of movie trailers on the Website. Therefore, the Court declines to address the other elements of the VPPA claim, and **GRANTS** Defendants' motion to dismiss Walsh's first cause of action.[5] Because the Court finds "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," *Schreiber Distrib.*, 806 F.2d at 1401, the dismissal is without leave to amend.

## B. Walsh's Claim Under Section 1799.3

Next, Defendants move to dismiss Walsh's second cause of action under Section 1799.3. (Mot. 12.) Section 1799.3 applies to "person[s] providing video recording sales or rental services." Cal. Civ. Code § 1799.3. Such persons are prohibited from disclosing "any personal information or the contents of any record, including sales or rental information" that they prepare or maintain "to any person, other than the individual who is the subject of the record." *Id.*

Here, Walsh argues that Defendants are "persons" subject to Section 1799.3 because they offer a "video recording . . . service" in the form of their movie screenings. (Opp'n 17.) According to Walsh, Defendants also provide either a sales service when they sell screenings as one-time packages with admission tickets, or a rental service in the sense that Defendants rent access to view the movies for a specific time interval. (*Id.*)

---

[5] Because the Court dismisses Walsh's VPPA claim on this basis, it need not reach Defendants' argument that the VPPA violates the First Amendment to the United States Constitution.

Defendants contend that the word "recording" actually modifies the words "sales" and "rental services." (Reply 12, ECF No. 29.) As such, Defendants contend that Section 1799.3 should instead be understood as applying to persons who either sell video recordings or provide rental services for video recordings, as opposed to the three activities outlined by Walsh. (*Id.*) Previous court holdings appear to follow Defendants' interpretation, where the word "recording" modifies the words "sales" and "rental services" in Section 1799.3. *See Fan v. NBA Properties Inc.*, No. 23-cv-05069-SI, 2024 WL 3297143, at *1 (N.D. Cal. July 2, 2024) (treating "recording" as modifying "sales"); *Mollett v. Netflix, Inc.*, No. 5:11-cv-01629-EJD, 2012 WL 3731542, at *2 (N.D. Cal. Aug. 17, 2012) (treating "recording" as modifying "rental services"), *aff'd*, 795 F.3d 1062 (9th Cir. 2015); *see also Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 286 (S.D.N.Y. 2023) (holding that Section 1799.3 "applies only to entities providing video materials to customers in exchange for money"). The Court agrees with this reading of the statute.

As such, whether Defendants provide "video recording services," as Walsh contends, is not sufficient for Section 1799.3 to apply here. Rather, Defendants must provide video recording *sales* or video recording *rental services* for Section 1799.3 to apply. Further, for the reasons discussed in the VPPA analysis, movie theaters do not rent or sell video recordings. This remains true in the context of Section 1799.3. *See Garza*, 2024 WL 1171737 at *1 (holding that a movie theater operator does not sell or rent movies in the context of Section 1799.3).

Accordingly, because Defendants do not fall under the purview of Section 1799.3, the Court **GRANTS** Defendants' motion to dismiss Walsh's second cause of action.[6] As with Walsh's VPPA claim, because "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," *Schreiber Distrib.*, 806 F.2d at 1401, the dismissal is without leave to amend.

---

[6] Similar to Walsh's VPPA claim above, because the Court dismisses Walsh's cause of action under Section 1799.3 on this basis, it need not reach Defendants' argument that Section 1799.3 is unconstitutional under the First Amendment to the United States Constitution.

## V. CONCLUSION

For the reasons above, the Court **GRANTS** Defendants' Motion to Dismiss **WITHOUT LEAVE TO AMEND**. (ECF No. 16.) The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

July 29, 2024

_____
       **OTIS D. WRIGHT, II**
  **UNITED STATES DISTRICT JUDGE**